No. 37,101

MR. AND MRS. R. L. RICE, *Appellees,* v. C. L. HANCOCK, doing business as St. Joseph and Concordia Truck Lines, PAUL COUCH and THE HAWKEYE CASUALTY COMPANY, *Appellants.*

(199 P. 2d 161)

Opinion filed November 13, 1948.

*Barton E. Griffith,* of Topeka, was on the briefs for the appellants.

*John D. Cunningham,* of Seneca, *Harry K. Allen* and *L. M. Ascough,* both of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for loss of personal property by fire. Judgment was for the plaintiffs. Defendants have appealed.

The petition after alleging the identification of the parties and the plaintiffs' ownership of certain household goods stated these household goods were on January 18, 1947, in plaintiffs' living quarters in the railway depot at Oneida; that the defendant Hancock operated a tractor-trailer transport truck unit, which was being on that day driven by defendant Couch, an employee of Hancock; that Couch drove his equipment between the depot and railway tracks at Oneida and so close to the railway tracks that part of the truck extended onto the tracks; that plaintiffs warned Couch there might be another train coming and that he must move the equipment but he refused to do so. Shortly thereafter a train approached, passed by the depot, struck the truck, burst the gasoline tanks on the truck, causing the gasoline to be thrown upon the depot and caused

the depot to be destroyed by fire, thereby destroying plaintiffs' household goods.

Plaintiffs set out five grounds of negligence on the part of defendant Couch, which they alleged were the proximate cause of the damages; that defendant Couch placed his truck on the railway tracks so that a train would collide with it; that he knew it contained tanks of gasoline which if torn apart would burn any property in the vicinity; that he placed it so close that when the gasoline tanks were torn apart the gasoline did spread onto the depot; that he was warned his equipment was in a place of danger and notwithstanding the warning refused to remove it; that he was guilty of wanton conduct by refusing to remove his equipment out of a place of danger.

Defendants answered first with a general denial except admitting the identity of the parties and pleaded that the damage was caused by contributory negligence of the plaintiffs because they were employees of the railway company and the station was so constructed that it was necessary and expedient for trucks stopping at this station to stop upon the tracks in the position in which defendant stopped; that the plaintiffs had authorized the defendants to thus stop their truck and the defendants relied upon the information furnished by plaintiffs as to whether trains were coming. The answer further alleged that on the day in question the plaintiffs individually advised the driver of the truck that there were no trains expected or due to arrive in such time as to prevent the driver from completing the loading and unloading of freight from his truck and that while this unloading was being carried out a train did arrive at the station so suddenly that the truck could not be removed to a place of safety.

The defendants charged that plaintiffs were negligent in failing to correctly inform the driver that a train was due to arrive, and that plaintiffs should have known that a train would shortly arrive, also in forgetting that the train was due to arrive and in permitting the truck to be stationed in this position when they knew or should have known that the truck if stopped where it did stop would be in a position of peril.

The reply was a general denial.

It appeared that Mrs. Rice was the station agent at Oneida and her husband was the station agent at Baileyville on the same railroad. They lived in the Oneida station and their household goods

were there. The depot faced south. The east end was the waiting room. The office was in the middle and the freight office was in the west end. The train came from the east and ran by the station on its south side; about four or five hundred feet east of the depot the track bends to the northeast. The telegraph window extended out from the depot and the nearest part of the building was eleven feet and three inches from the north rail of the track. The defendant truck line has a contract with the Union Pacific to pick up and deliver freight at this station. On the morning in question Couch pulled up from the west and stopped on the platform between the depot building and the track headed east. There is no dispute by any of the parties that it was necessary for the truck if it pulled up in front of the freight-house door to extend over the tracks a short distance. Mrs. Rice testified on direct examination that on the morning in question when Mr. Couch drove up he asked whether or not the motor had gone. (The motor was the regular train on this line.) Mrs. Rice said "Yes, 543 has cleared." She testified on direct examination that was all that was said. Couch unloaded four sacks of feed in just a few minutes and took the bills in for her to sign. Just as she was signing them she heard a whistle. Her testimony was "I said, 'My God, there is the train.'" Couch dashed out in an effort to get the truck off the tracks, but he did not succeed. The train, an extra, hit the truck, causing its gasoline tanks to explode and the depot was a mass of flames in just a minute or two. It appears from the testimony that Mrs. Rice was a telegraph operator; that there was a telegraph instrument in the Oneida station, but she was not paid as a telegraph operator on this particular job and she did not pay any attention to the messages that were sent over the wire. On the morning in question the regular train No. 543 had gone and what is known as a "B" car, an official car that "runs by itself," had gone by. She testified further, as follows:

"Q. Now, you knew, did you not Mrs. Rice, this morning sometime an extra freight was due through your station? A. I didn't know, only that there had been one on the line, but I only heard that. I didn't know that officially.

"That morning I asked the section foreman if anything was coming and he said that an extra was supposed to be called. This man was the Sabetha section foreman. He came by the station after 8 o'clock A. M. He stopped and did the things they had to do and then went on west.

"Q. Why did you ask him that morning if there was an extra coming through? A. Why, no more that morning than any morning.

"Q. In other words, at all times you have endeavored to see or to try to

learn what traffic moves might be over that branch line? A. Well, you just seem naturally ask to keep that in view."

The jury answered special questions, amongst them being Question No. 1, "Did the station agent know prior to the accident that an extra train would be ordered out on the day of the accident? A. No."

The defendants in their motion for a new trial included the motion to set aside this answer, among others, because it was contrary to the evidence. The court instructed the jury in instruction No. 2, in part, as follows:

"One of the plaintiffs, Mrs. R. L. Rice, has testified that she knew on January 18, 1947, that an extra freight train was called and that at the time of defendants parking said truck on the depot platform she did not inform defendant's truck driver that such freight train was called. It is a question for the jury to decide whether or not defendant's parking of the truck on the depot platform on January 18, 1947, was an act of negligence and was the direct and proximate cause of the collision, with resulting damage to plaintiffs' goods, and also it is a question of fact for the jury to decide whether or not the failure of Mrs. R. L. Rice to apprise the defendant's truck driver that an extra train had been called on January 18, 1947, was an act of contributory negligence, or such negligence on the part of plaintiffs which combined and concurred with the alleged negligence of defendant, resulting in said collision and the direct and proximate cause thereof with the resulting damage, and it is generally a question of fact for the jury to decide whether or not there was negligence on the part of defendants or contributory negligence on the part of plaintiffs which is the direct and proximate cause of the collision, with resulting damage."

Defendants point out evidence of Mrs. Rice, which has been quoted already, the instructions of the trial court calling the attention of the jury to this testimony and argue that when the jury answered question No. 1 in the negative the answer indicated such bias and prejudice on the part of the jury that the general verdict could not be anything more than the result of passion and prejudice, such as to deprive the defendants of a fair trial. We agree with the defendants. The only defense of defendants was contributory negligence of plaintiffs in permitting Couch to park his truck on the track when Mrs. Rice knew of the extra being on the line and that it might approach the depot while the truck was on the tracks. Assuming that the instruction was a correct statement of the law and there was no objection to it, then defendants were entitled to have this circumstance, amongst all the other facts and circumstances, considered by the jury in consideration of the general ver-

dict. The negative answer in the face of the evidence of Mrs. Rice herself indicates a determination on the part of the jury to return a general verdict and to answer special questions in favor of plaintiffs, no matter what the evidence. The defendants did not have a fair trial.

The judgment of the trial court is reversed with directions to grant defendants a new trial.